Gregory A. Miles, Esq.
Nevada Bar No. 4336
**ROYAL & MILES LLP**
1522 W Warm Springs Road
Henderson, NV 89014
Telephone: (702) 471-6777
Facsimile: (702) 531-6777
Email: gmiles@royalmileslaw.com
*Attorney for Defendant*
*ARISTOTELIS ELIADES*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JONAH AMSEL; JULIO RIVERA; and, EDUARDO MALTMAN,<br><br>Plaintiffs,<br>vs.<br><br>DOUGLAS D. GERRARD; DOLORES ELIADES; and ARISTOTELIS ELIADES; DOES I through X and, ROES I through X, inclusive.<br><br>Defendants. | Case No: 2:16-cv-00999-RFB-GWF<br><br>**DEFENDANT ARISTOTELIS ELIADES' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

COMES NOW, Defendant Aristotelis Eliades, by and through his counsel of record, Royal & Miles LLP, and opposes Plaintiffs' Motion for Partial Summary Judgment in this action.

/ / /

/ / /

/ / /

/ / /

This Opposition is made and based upon the papers and pleadings on file herein, the points and authorities submitted in support hereof, and any oral argument that may be entertained by the Court in this matter.

DATED this 18 day of October, 2017,

ROYAL & MILES LLP

Gregory A. Miles, Esq.
Nevada Bar No. 4336
1522 W. Warm Springs Road
Henderson, NV 89014
*Attorney for Defendant*
*ARISTOTELIS ELIADES*

**POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION**

**I.**

**INTRODUCTION**

Plaintiffs sued Defendant Aristotelis Eliades, together with Delores Eliades and Douglas Gerrard, Esq., on theories of individual liability arising under the Fair Labor Standards Act[1]. However, as established in Aristotelis Eliades' pending Motion for Summary Judgment, and reemphasized in this Opposition, the evidence generated in this case has shown that (1) Aristotelis Eliades was not the employer of Plaintiffs, (2) Aristotelis Eliades was not the owner of the entity claimed to be Plaintiffs' employer, (3) Aristotelis Eliades was not involved in the day-to-day management or decisions of the entity claimed to be Plaintiffs' employer, (4) Aristotelis Eliades did not hire or fire employees, (5) Aristotelis Eliades did not supervise or

[1] As has been emphasized in prior filings, Plaintiffs made the decision to sue these individuals, rather than their putative employer or the owner of their putative employer, because Plaintiffs missed the "Claims Bar Date" established by the United States Bankruptcy Court.

control employee work schedules or conditions of employment, (6) Aristotelis Eliades did not determine the rate or method of payment of employees, (7) Aristotelis Eliades did not maintain employment records, and (8) Plaintiffs have failed to produce evidence that even remotely supports the allegations of their Amended Complaint. For each of these reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied.

## II.

## DISCUSSION REGARDING PLAINTIFFS' SO-CALLED "STATEMENT OF UNDISPUTED FACTS"

As the Court has almost certainly noticed, Plaintiffs play fast and loose in their Motion in describing both the facts and the governing law, grossly misinterpreting the evidence cited in their Motion, and applying a rather tortured analysis of the governing law. This is particularly true in regard to Defendant Aristotelis ("Telly") Eliades' limited role in the operation of the Olympic Garden Club. An illustration of the gross factual misstatements set out in Plaintiffs' Motion is addressed below.

### 1. The Evidence Cited by Plaintiffs Does Not Support the Contention that Telly "Managed" the Club.

On p. 2, paragraph 1 of Plaintiffs' pending Motion, they generically assert that OG Eliades LLC and OG Eliades AD, LLC "owned, controlled and managed the OG". While it has never been disputed that the OG Eliades and OG Eliades AD, LLC entities owned the OG during the relevant timeframe, Plaintiffs point to no factual support for the conclusion that the two entities "managed" the OG during the time period in question, and certainly no factual support for the contention that Telly, as an individual member of the two ownership entities, was a "manager" of the club. A review of the exhibits identified by Plaintiffs reveals that those exhibits offer no support for the assertion that the two entities managed the OG. This obvious

overreaching when addressing the evidence underscores a fundamental flaw in Plaintiffs' claims against Telly. Their attempt to link Telly to those factors necessary for establishing that he was Plaintiffs' de facto employer under the FLSA is tortured and meritless.

Following the liberal theme found the first paragraph of their so-called "Statement of Undisputed Facts," Plaintiffs inaccurately describe Telly as a "manager" of the OG during the relevant time period suggestion in the second paragraph. The exhibits referenced by Plaintiffs as purported support of this allegation in fact do not come close to laying a foundation for such a conclusion. Plaintiffs point to a Preliminary Ruling of the Bankruptcy Court, a District Court opinion, discovery responses from Telly and Dolores and a Joint Venture Agreement as purported support for this contention. However, the determination that Telly managed the club is nowhere to be found in those exhibits. Supportive evidence for that allegation simply does not exist.

More significantly, Plaintiffs' own deposition testimony belies their allegation that Telly "managed" or "controlled" the OG. Plaintiffs were deposed in June 2017. Their testimony regarding Telly was rather inconsistent with the detailed allegations set out in their Amended Complaints and in their pending Motion. Plaintiffs testified as follows:

**a.** **<u>Testimony of Julio Rivera</u>:**

Q. [By Mr. Gerrard] And during this time period, 2013 through July of 2015, did you ever get any directions on how to perform your job from Teli Eliades?

A. [By Mr. Rivera] Never.

Q. How often did you see Teli Eliades during this time period?

A. Not very often. Teli never stayed at the club. He would come in for a short period and leave.

Q. About how often do you think you saw him during this period?

A. I probably saw him about six times a year.

Q. So did you believe or have any information about whether Teli was involved in hiring or firing employees during that time period?

A. Not that I know of.

Q. You don't believe that he was?

A. I'm not sure. I don't know what his role was. I know he was an owner and that's all I know. But as far as hiring and firing, I didn't know anything about what Teli did.

Q. And what about giving instructions to people who worked there?

A. I'm not sure what Teli did.

Q. So as far as you know, he wasn't involved in firing or hiring or giving directions during that time period, to your knowledge?

A. As far as I know he was an owner, and that's all I know.

Q. I guess what I'm asking is, you never saw him in the club physically directing people to do things, correct?

A. I never saw Teli in the club. I saw him walking through the door and never saw him officially in the club.

Q. And he never came outside and acted like he was giving directions or –

A. No. He exchanged pleasantries and that's it.

(Exhibit A, Deposition of Julio Rivera, p. 61, line 21 – p. 63, line 7)

b. **Testimony of Jonah Amsel**:

Q. [By Mr. Gerrard] What about Telly? Do you know who Telly is?

A. [By Mr. Amsel] Yes.

Q. Okay. Did you -- from 2013 to 2015, did you ever have any direct interactions with Telly?

A. None.

A. In that period of time, I never physically saw Telly one time.

Q. From the beginning of 2013 through the time the club was sold, you never saw Telly?

A. I never saw -- I believe I saw his vehicle there multiple different times, but I never physically saw Telly there.

Q. And do you have any knowledge what Telly was doing, if anything, at the club during that time period?

A. Absolutely not. I have no idea.

(Exhibit B, Deposition of Jonah Amsel, p. 61, line 17 – p. 62, line 13)

Q. Did you ever take directions from Telly on your job?

A. Telly never was -- I never -- at Olympic Garden, I never had one interaction with Telly. I've only met Telly once in my life.

Q. Did you have any idea whether Telly had the authority on his own to hire or fire you?

A. I don't know.

(Exhibit B, Deposition of Jonah Amsel, p. 157, line 18 – p. 158, line 2)

Q. And you never saw that Telly, Dolores or myself supervised or controlled your work schedules, did you?

. . .

A. No. I didn't believe you – I never saw any of you guys around really.

Q. And so you don't know whether -- you don't have any facts or knowledge of your own about whether Dolores, Telly or myself supervised or controlled your work schedule, correct?

A. Correct.

Q. And you, likewise, don't know whether Dolores, Telly or myself controlled the conditions of your job?

. . .

A. I would say no.

Q. You don't know?

A. I don't know. I never dealt with any of you three at that facility on a basis.

(Exhibit B, Deposition of Jonah Amsel, p. 159, line 7 – 160, line 6)

A. I've never actually seen any of you three actually do anything.

Q. By "you three," you mean Dolores, Telly or myself, right?

A. Correct, yes, the three of you.

(Exhibit B, Deposition of Jonah Amsel, p. 160 line 14-18)

A. Honestly, Telly didn't seem like he wanted to be there. He didn't offer a whole lot. He seemed very disinterested, to be completely honest.

(Exhibit B, Deposition of Jonah Amsel, p. 194, lines 17-20)

c. **Testimony of Eduardo Maltman**

Q. Do you know who Teli Eliades is?

A. I know him, but I never spoke with him.

Q. Okay. Do you know what he looks like?

A. If I see him, I think.

Q. Did Teli have any role in running the club in 2013?

A. I have no recollection of that, but I always hear that he was.

Q. What did you hear?

A. That he was one of the owners.

Q. Okay. But being an owner and being in charge could be two different things, right?

A. Yes, sir.

Q. So did you ever see Teli in charge of taking any active role in managing the club?

A. I was always outside, sir, so I can't tell you.

Q. All I am asking is what you know. So to your knowledge, did Teli ever actively participate in running the club in 2013?

A. I'm not sure.

Q. How about in 2014?

A. I'm not sure.

Q. How about in 2015? Again, you are not sure?

A. I'm not sure, sir.

(Exhibit C, Deposition of Eduardo Maltman, p. 35, line 15 – p. 36, line 14)

Q. Same questions about Teli Eliades. In 2013, did he have authority to hire or fire employees?
A. I don't know, sir.
Q. And what about in 2014?
A. I don't know, sir.
Q. And what about 2015?
A. I don't know.

(Exhibit C, Deposition of Eduardo Maltman, p. 39, lines 12-18) Thus, contrary to the so-called "Statement of Undisputed Facts" set out in Plaintiffs' Motion, Plaintiffs acknowledged under oath that they really have no idea what Telly's role was in the operation of the business or in relation to managing the employees of the business.

**2. <u>Plaintiffs Put Forth No Evidence that Telly Hired or Fired Anyone</u>.**

Plaintiffs suggest in their "Statement of Undisputed Facts" that "only the OG owners" had the ability to hire and fire employees. This is yet another example of Plaintiffs' whimsical construction of the evidence. A review of the deposition testimony cited by Plaintiffs reveals that it does not support the contention. When questioned regarding who had authority to hire and fire an employee, Pete Nikolopoulos (an actual OG manager) was unclear who had that authority. A review of Ms. Neal's examination on that issue reveals that Mr. Nikolopoulos may have been uncertain in his answer because Ms. Neal failed to define "employee" in her questions (i.e., whether she referred to bona fide employees of the club or the independent contractor valets who are her clients). On this subject, Mr. Nikolopoulos' testimony was as follows:

Q. [By Ms. Neal] Okay. So one of those three people [Dolores, Telly and Diti Eliades], then, would have given the directive – from what you're saying, would have given the directive to fire Mr. Amsel; is that also correct?

[Objections by counsel as to speculation]

A. As far as I know, I mean –

Q. Okay, you just don't remember who it was?

A. I don't.

Q. Okay.

(Exhibit D, Deposition of Peter Nikolopoulos, pp. 125-126). In short, Mr. Nikolopoulos did not testify in the manner described by Plaintiffs on the subject of hiring and firing authority.

### 3. <u>**Plaintiffs' Interpretation of the Language of the September 2013 Bankruptcy Court Order is Likewise Inaccurate**</u>

In their "Statement of Undisputed Facts," Plaintiffs direct the Court to the Bankruptcy Court's order of September 6, 2013 as purported evidence that Telly was a "manager" of the club. However, their interpretation of the Order is, at best, a factual stretch, at least in their description of Telly. In September 2013, the Bankruptcy Court directed Telly, along with Dolores and Diti, *in their capacity as members of the entities that owned the OG*, to meet weekly with the Trustee and participate in management decisions relating to the club. The Court's directive by no means elevated Telly to the position of "manager of the club" such that he became Plaintiffs' de facto employer. At best, it merely required Telly to participate in weekly meetings because of his membership interest in OG Eliades, LLC and OG Eliades AD, LLC (which owned the club). Notably, Telly, through counsel, objected to the language of the Order (*See* Plaintiff's Exhibit 11 at p. 4 (Bates number P10399).

As noted above, Plaintiffs were examined regarding Telly's involvement in the operation of the club. Their testimony depicted an individual who was rarely present at the property – not an individual who was involved in managing the club. Telly was also examined in deposition on the subject of his involvement in the operation of the club. His own testimony reflected considerably less involvement than that now espoused by Plaintiffs. On the subject of his involvement at the club, Telly explained that during the relevant time period, he was at the club 3-4 times per week at most (Exhibit E, p. 25, lines 21-22). He clarified in his July 2017 declaration to the Court (attached hereto as Exhibit F) that on those occasions he was at the club, he was present only an hour or two (notably consistent with Julio Rivera's deposition testimony that Telly "would come in for a short period and leave") (Exhibit F). Telly was more involved in other business pursuits during the relevant time period (Exhibit E, p. 56, lines 13-19). When at the club, Telly would sign checks prepared by the accounting department, look at the financials and attend occasional meetings (Exhibit E, p. 26, lines 16-17, p. 27, lines 5-8; Exhibit F). Those activities continued until a Trustee was appointed (Exhibit E, p. 28, lines 4-8). Thereafter, the Bankruptcy Court ordered Telly to attend weekly meetings with Dolores and the Trustee's representative, which order he complied with (Exhibit E, p. 29, lines 3-5, p. 29, lines 14-16). Telly was at the club even less when the Trustee took over (Exhibit F). The meetings occurred in the morning at 10:00 or 11:00 a.m. (Exhibit E, p. 37, lines 9-15). At the weekly meetings, they would discuss financials and ways to improve the business. If there was any discussion regarding employees during those meetings, it would have only involved management-level employees (Exhibit E, p. 29, lines 17-23; Exhibit F).

Telly further testified that management of the club was carried out through general managers and department managers (such as Mr. Nikolopoulos), who made decisions relating to

club employees (Exhibit F). The general managers of the club during the relevant time period included Manny Varagiannis (Exhibit E, p. 45, lines 5-8), Steve Tzelalis (Exhibit E, p. 29, lines 12-16), and Tom Svast (Exhibit E, p. 40, lines 15-21). Notably, Telly was almost never at the club after 6:00 p.m. (the typical start time that Plaintiffs began working outside the club). If Telly was at the club after 6:00 p.m., it was extremely rare (Exhibit E, p. 37, lines 16-22), perhaps once or twice a year (Exhibit F).

### 4. <u>Plaintiffs' Inaccurate Interpretation of, and Reliance upon, the Time Entries of Gerrard Cox & Larsen is Grossly Improper</u>

In paragraphs 21 and 24 of their "Statement of Undisputed Facts," Plaintiffs improperly refer to and rely upon the attorney fee applications of Gerrard Cox & Larsen LLP in postulating the activities of Telly in his attempt to satisfy the September 2013 Bankruptcy Court Order. However, attempting to bind Telly to the time entries of Gerrard Cox Larsen is entirely improper and wholly inadequate to establish Telly's level of involvement. In fact, Plaintiffs' very description of the time entries is inaccurate and deceptive. For example, on the first bullet item listed in page 8 of their Motion, Plaintiffs describe, "Meeting re: management, review of financial statements, trial balance and daily accounting sheets (Ex. 30a, P10479 – 09/04/13)" A review of the referenced time entries reveals that Plaintiffs combined two entries to attempt to make it more compelling in their favor. The two time entries referenced state as follows, "Travel to Olympic Gardens. Met with owners and discussed management. Travel back to office" and "Draft short letter summarizing Olympic Gardens meeting. Review financial statements, trial balance and daily accounting sheets e-mailed by owners" (*See* Exhibit 30a of Plaintiffs' Motion at p. P10479). Thus, the only involvement conceivably attributable to Telly is that he met with Leighton Kohler, Esq. and "discussed management." Even assuming this actually occurred, such activity would not elevate Telly to "manager of the club".

In the next set of time entries referenced (the second bullet point on page 8 of the Motion) Plaintiffs suggest that Telly was involved in "Meeting re: management, walk through cash cage, discuss procedures with cage cashier, collect bank statements (Ex. 30a, P10482 – 09/11/13; P10488 – 10/02/13)." Once again, a review of the actual time statements reflects activities conducted by Leighton Kohler, Esq., not Telly. While Telly may have been involved in the "meeting with owners," there is no indication that he was involved in any of the other activities described in the time entries. The same is true in virtually every other time entry referenced in Plaintiffs' Motion.

In fact, many of the time entries relied upon by Plaintiffs' as purported evidence of Telly's activities have no reference, whatsoever, to Telly or the other members of OG Eliades, LLC and OG Eliades AD, LLC. By way of example, in their 18th bullet point on page 8, Plaintiffs refer to a time entry dated May 22, 2014, suggesting that "the defendants" had a discussion regarding OG operations that day. A review of the time entry reveals that the activity was merely an intra-office discussion between Leighton Kohler, Esq. and Doug Gerrard, Esq. regarding operation of the OG club. And yet, Plaintiffs attribute that activity collectively to "all Defendants." Plaintiffs' attempt to attribute the activities of the Gerrard Cox Larsen firm to Telly is, very simply, a gross and intentional misinterpretation of the time entries. At best, the time entries may describe Gerrard Cox Larsen's involvement in carrying out their duties as Trustee's counsel, and later as Receiver, relating to the operation of the club. The entries do not describe Telly's actual involvement. Telly's testimony is the best evidence of his limited involvement in the operation of the club, which, as noted, is consistent with Plaintiffs' own testimony that Telly was rarely at the club.

It is worthy of note that many of the Gerrard Cox Larsen time entries referenced by Plaintiffs distinguish the "owners" (who technically should be referred to as "members of the owners") from "management". Gerrard Cox Larsen's effort to distinguish the owners from the managers is significant. It supports Telly's position that he was only minimally involved in the operation of the club.

## III.

## LEGAL ARGUMENT

### A. The Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (alteration in original) (internal quotation marks omitted).

Notably, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). At the summary judgment stage, the court's role is to verify whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472. *See also*, *Skinner v. Haley*, 2017 U.S. Dist. LEXIS 70201 (D. Nev. Feb. 6, 2017)

**B. <u>The Governing Law Pertaining to Individual Liability Under the FLSA Fails to Support Plaintiffs Claims Against Telly</u>**

Plaintiffs assert that Telly (along with Delores Eliades and Douglas Gerrard, Esq.), is individually liable as Plaintiffs' employer under the Federal Labor Standards Act due to Telly's involvement in the operation of the club. Admittedly, the definition of "employer" under the FLSA is not limited by the common law concept of "employer". The FLSA definition of "employer" includes "any person acting directly or indirectly in the interest of an employer *in relation to an employee.*" 29 U.S.C. §203(d) (emphasis added). *See also*, *Lambert v. Ackerley, 180 F.3d 997, 1011-12 (9th Cir. 1999)* (quoting *Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983)*). However, this expansive interpretation has limitations. Key to the FLSA's expansive definition of "employer" is the phrase "in relation to an employee." Thus, only "[w]here an individual *exercises 'control over the nature and structure of the employment relationship,'* or 'economic control' over the relationship, is that individual an employer within the meaning of the [FLSA], and is subject to liability." *Lambert,* 180 F.3d at

1012 (quoting *Bonnette*, 704 F.2d at 1470) (emphasis added). Mere ownership or even managerial level control in a business is not enough.

To determine whether an owner or manager can be held liable under the FLSA, and specifically, whether the "in relation to an employee" element of the standard is satisfied, courts are directed to look at four factors: (1) whether the individual *exercised power* to hire and fire the employees, (2) whether the individual supervised and controlled employee work schedules or conditions of employment, (3) whether the individual determined the rate and method of payment, and (4) whether the individual maintained employment records. *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991); *See also, Lambert, 180 F.3d at 1012* (approving district court's jury instruction addressing these factors); *Ford v. Yasuda*, 2014 U.S. Dist. LEXIS 109540 at 26-27. In other words, to rise to the level of individual liability under the FLSA, there must be evidence that the individual *actually exercised authority relative to the employees of the company*, i.e., hired and fired, supervised employees, determined rate and method of payment, and maintained employment records.

In *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009), which has notably been relied upon by Plaintiffs on multiple occasions in this case, the Ninth Circuit Court of Appeals considered the appeal of a dismissal under Fed. R. Civ. P. Rule 12(b). The case was filed by an employee who had not received final wages before the employer, the Castaways Hotel & Casino, filed for bankruptcy. The employee alleged that certain of the owners/managers were individually liable to pay the employee's wages under the FLSA. On review, the court found that the three individual defendants in that case could be deemed "employers" under the FLSA by virtue of their *actions in relation to the employees of the company*. In addition to finding that the

individual defendants had never challenged their status as employers under the FLSA[2], the Ninth Circuit found that, at least pursuant to the allegations of the complaint, the individual defendants fell within those factors previously delineated by the Ninth Circuit in *Gilbreath* and *Lambert*, such that the plaintiffs could survive a motion to dismiss. Specifically, the *Boucher* court found that the plaintiffs had at least alleged in their complaint that the three individual defendants had handled labor and employment matters for the company, and had control and custody of the plaintiff class, employment and place of employment.

Although this matter does not involve a motion under Rule 12, *Boucher* is nevertheless instructive because in reaching its decision to overturn the dismissal of the case, the *Boucher* court referenced, as support, the Ninth Circuit's decision in *Lambert* in which the four defining factors were addressed. *Boucher*, 572 P.3d at 1091. It further referenced decisions of the First Circuit (*Chao v. Hotel Oasis, Inc.*, 493 F. 3d 26, 34 (1st Cir. 2007) (a corporation's president could be personally liable where it was shown that he had *personal control* over the business's day-to-day operations and was the corporate officer principally in charge of directing employment practices), and the Sixth Circuit (*United States Department of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778-779 (6th Cir. 1995) (a company president was an "employer" under the FLSA where he ran the business, maintained records, determined employment practices, and was *personally involved* in scheduling hours, payroll and hiring employees).

**C. <u>Telly is Neither the Owner nor a Manager</u>**

Applying the governing law to the evidence, there is no question that the evidence fails to support the claims against Telly. As a starting point, the Court must recognize that Telly is

---

[2] This point may be utilized by the Court to distinguish *Boucher* from the facts of this case, where all three Defendants have denied that they were the Plaintiffs' employers.

not even the owner of the putative employer of the three Plaintiffs. According to Plaintiffs' allegations, their purported employer was the Olympic Garden Gentlemen's Club. It is undisputed that the owners of the purported employer were OG Eliades, LLC and OG Eliades AD, LLC. Telly was a merely member of the limited liability companies. In other words, he is two full steps removed from the entity that Plaintiffs allege employed them. This glaring reality must be taken into account by the Court when applying the law which governs this case.

Moreover, as discussed above, Telly was not a manager of the club. In sundry arguments put before the Court, including Plaintiffs' Amended Complaints and more recently in Plaintiffs' pending Motion, Plaintiffs assert that Telly was a manager of the OG Club. Such is not the case. The allegation is unsupported by Plaintiffs' depositions, by Telly's deposition, or by any of the evidence referenced by Plaintiffs in their Motion. As described in the evidence, Telly had a very limited role in the club. He signed checks that were prepared by the accounting department, he reviewed financials and attended occasional meetings. He was present no more than 3-4 times each week, an hour or two each time, and even less when the bankruptcy Trustee took over. Telly was absent in the evenings when Plaintiffs allege their "shifts" began. There is no evidence that Telly ever participated in decisions regarding, or was even cognizant of, the status of Plaintiffs as employees or independent contractors. He never hired or fired anyone. Plaintiffs are hard-pressed to even suggest, let alone establish in the evidence, that Telly was a manager of the OG Club.

**D. <u>There is No Evidence that Telly Engaged in Activities Relating to the Employment of Company Employees</u>**

At the crux of the Court's consideration of Plaintiffs' Motion and Telly's competing Motion is the lack of evidence that Telly exercised authority *relative to the employees of the company*, i.e., hired and fired, supervised employees, determined rate and method of payment,

and maintained employment records, which are requirements under *Lambert* and *Gilbreath* for individual liability under FLSA. The record is completely void of such evidence. Plaintiffs apparently believe that mere evidence of ownership of the putative employer is enough to pass muster. Aside from the fact that Plaintiffs do not even meet that argument (as explained above, Telly did not personally own the club), this Court is simply not in a position to continue entertaining the claims against Telly because there is no evidence that he hired and fired, supervised employees, determined rate or method of payment, or maintained employment records.

Telly agrees with Plaintiffs that there is no genuine issue of material fact here. However, contrary to Plaintiffs' argument in their Motion, the undisputed evidence favors Telly, not Plaintiffs, on the claim that Telly is Plaintiffs' putative employer. Based upon the governing case law addressed above, there is simply no basis to conclude that Telly bears individual liability under the FLSA. The record is void of evidence necessary to rule in Plaintiffs' favor.

///

///

///

///

///

///

///

///

///

///

**IV.**

**CONCLUSION**

The high summary judgment standard is simply not satisfied in Plaintiffs' favor. Plaintiffs have failed to produce evidence that could possibly support a decision in their favor from a reasonable jury under the FLSA, let alone evidence that would support summary judgment. Telly Eliades submits that Plaintiffs' Motion for Summary Judgment should be denied.

DATED this 18 day of October, 2017,

**ROYAL & MILES LLP**

Gregory A. Miles, Esq.
Nevada Bar No. 4336
1522 W. Warm Springs Road
Henderson, NV 89014
*Attorney for Defendant*
*ARISTOTELIS ELIADES*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19 day of October, 2017, I served a true and correct copy of the foregoing DEFENDANT ARISTOTELIS ELIADES' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

James P. Kemp, Esq.
Victoria L. Neal, Esq.
KEMP & KEMP
7435 W. Azure Dr., Suite 110
Las Vegas, NV 89130
*Attorneys for Plaintiffs*
Facsimile: 702-258-6983
Email: jp@kemp-attorneys.com

Douglas D. Gerrard, Esq.
Nathan R. Henderson, Esq.
GERRARD COX & LARSEN
2450 St. Rose Pkwy., Suite 200
Henderson, NV 89074
*Attorney for Defendant*
*DOUGLAS D. GERRARD*
Facsimile: 702-796-4848
Email: dgerrard@gerrard-cox.com

Lisa Rasmussen, Esq.
LAW OFFICE OF LISA RASMUSSEN
601 S. Tenth Street, Suite 100
Las Vegas, NV 89101
*Attorney for Defendant DOLORES ELIADES*
Facsimile: 702-489-6619
Email: lisa@lrasmussenlaw.com

Ashley Schmitt
An employee of ROYAL & MILES LLP