# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JONAH AMSEL,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS G. GERRARD, *et al*.,<br><br>    Defendants. | Case No. 2:16-cv-00999-RFB-GWF |
| JULIO RIVERA,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS G. GERRARD, *et al*.,<br><br>    Defendants. | Case No. 2:16-cv-01005-RFB-GWF |
| EDUARDO MALTMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS G. GERRARD, *et al*.,<br><br>    Defendants. | Case No. 2:16-cv-01007-RFB-GWF<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT, MOTION FOR SANCTIONS, AND MOTION TO EXCLUDE** |

## I.     INTRODUCTION

Before the Court is Defendant Aristotelis Eliades' ("Mr. Eliades") Motion for Summary Judgment, ECF No. 143; Defendant Douglas Gerrard's ("Gerrard") Motion for Summary Judgment regarding Claims of Jonah Amsel and Julio Rivera, ECF No. 151; Gerrard's Motion for

Summary Judgment regarding Claims of Eduardo Maltman, ECF No. 152; and Plaintiffs Jonah Amsel ("Amsel"), Julio Rivera ("Rivera"), and Eduardo Maltman's ("Maltman") (collectively, "Plaintiffs") Motion for Summary Judgment, ECF No. 153.

Also before the Court is Plaintiffs' Motion for Sanctions, ECF No. 185, and Plaintiffs' Motion in Limine, ECF No. 186.

## II. BACKGROUND

### A. Procedural History

Amsel filed an Amended Complaint with Jury Demand in the Eighth Judicial District Court District Court on February 24, 2016, alleging violations of the Fair Labor Standards Act ("FLSA") requirements for minimum wage and overtime pay against Gerrard, Mr. Eliades, and Dolores Eliades ("Ms. Eliades") (collectively with Mr. Eliades, "the Eliades Defendants"). ECF No. 1-1. The case was removed to this Court on May 4, 2016. ECF No. 1. Rivera and Maltman filed similar cases in state court, which were removed to federal court. Because the three cases involve similar parties, the same claims, and nearly identical factual allegations, they were consolidated on June 6, 2016.[1] ECF No. 24.

The Court held a hearing on Motions to Dismiss and other non-dispositive motions on February 21, 2017 and denied the Motions to Dismiss on the record. ECF No. 98.[2]

Ms. Eliades filed Crossclaims and Amended Crossclaims against Mr. Eliades on March 13, 2017. ECF Nos. 109, 110. Mr. Eliades filed a Third Party Complaint against OG Eliades, LLC, ("OGE") and OG Eliades AD, LLC ("OGEAD") on March 15, 2017. ECF No. 111. On March 24, 2017, Ms. Eliades also filed a Third Party Complaint against OGE and OGEAD. ECF No. 117.

Plaintiffs filed Motions to Bifurcate Trial and Discovery with regard to Ms. Eliades'

---

[1] Plaintiffs also alleged violations of Nevada wage laws, which were later dismissed. ECF No. 1-1; ECF No. 98 (order granting motion to withdraw state law claims and dismissing the claims accordingly).

[2] During the hearing, the Court granted Plaintiffs' oral stipulation to withdraw their state law claims.

Crossclaims, Mr. Eliades' Third Party Complaint, and Ms. Eliades' Third Party Complaint. ECF Nos. 113–115, 122–123. The Court granted these motions on February 9, 2018. ECF No. 192.

Mr. Eliades filed a Motion for Summary Judgment on August 1, 2017. ECF No. 143. Plaintiffs filed a Response on November 16, 2017. ECF No. 171. Mr. Eliades filed a Reply on November 29, 2017. ECF No. 179.

On September 19, 2017, Gerrard filed a Motion for Summary Judgment on Amsel's and Rivera's claims, and a separate Motion for Summary Judgment on Maltman's claims. ECF Nos. 151–152.[3] The Eliades Defendants joined to Gerrard's Motion for Summary Judgment. ECF No. 158, 163. Responses were submitted on November 16, 2017. ECF Nos. 172–173. Replies were filed on November 30, 2017. ECF Nos. 180–181.

Plaintiffs filed a Motion for Summary Judgment on September 19, 2017. ECF No. 153. Mr. Eliades filed a Response on October 19, 2017. ECF No. 164. On November 16, 2017, Gerrard filed a Response. ECF No. 174. The next day, Ms. Eliades filed a Response. ECF No. 175. Plaintiffs filed Replies on November 30 and December 1, 2017. ECF Nos. 182–184.

**B. Undisputed Facts**

The Court finds the following facts to be undisputed.[4]

Plaintiffs were previously involved with the Olympic Garden Gentlemen's Club ("the Club") providing promotional services and valet services. They were designated as independent contractors. Between 2013 and 2015, the Club was owned by two Nevada limited liability companies: OG Eliades, LLC ("OGE") and OG Eliades AD, LLC ("OGEAD"). Plaintiffs were also involved with OG VIP, LLC ("OG VIP"), a third company, which provided limousine services to transport the Club's patrons. They earned wages from OG VIP as limousine drivers. OGE and OGEAD paid promotional fees to OG VIP to payout to drivers for each patron transported to the Club.

---

[3] Ms. Eliades filed a Joinder to Mr. Eliades' and Gerrard's Motions for Summary Judgment. ECF No. 158. Mr. Eliades filed a Joinder to Gerrard's Motion for Summary Judgment. ECF No. 163.

[4] The Court takes judicial notice of the bankruptcy filings which contain many of these facts.

In this suit, Plaintiffs' claims focus on their valet positions at the Club, in which they each worked at some point between 2013 and 2015. As valets, Plaintiffs' responsibilities included opening doors for cabs and limousines, counting the patrons that entered the Club and writing that number on a ticket to give to the cashier in the Club, and paying the cab drivers a designated per-head fee. At times, valets also walked entertainers to their cars. Plaintiffs claim that they were not paid minimum wage or overtime for their work as valets.[5]

Due to disputes among Eliades family members, a series of state court suits and bankruptcy proceedings commenced in 2012 involving the Club and its ownership. Yvette Weinstein ("Weinstein"), not a party to the instant litigation, was appointed Chapter 11 Trustee in late 2012.[6] She was one of the parties that moved to appoint a receiver over the Club in bankruptcy proceedings. In its Preliminary Ruling on consolidated adversary proceedings, the Bankruptcy Court authorized a temporary receivership over OGE and OGEAD pursuant to Nevada law. The law firm for the Trustee, Gerrard Cox Larsen, became the temporary Receiver.[7]

Well before formal appointment of the Receiver, the Bankruptcy Court ordered the owners of OGE and OGEAD—including Mr. Eliades and Ms. Eliades—to attend weekly meetings with a representative of the Chapter 11 Trustee "to review and discuss the financial status and business operations of the Olympic Gardens and to jointly make all management decisions regarding the operations of the Olympic Gardens" beginning August 23, 2013.

On October 7, 2014, the Gerrard Cox Larsen firm was formally appointed Receiver over OGE and OGEAD for the purpose of running the Club and to take possession and control of all assets and operations of the Club. The Bankruptcy Court's order on the receivership appointment gave Gerrard and his colleagues at the firm the "full, complete, and absolute authority to operate,

---

[5] Maltman was hired as an employee in December 2014 by Gerrard. He alleges that, because Defendants were employers at all relevant times until 2015, he is entitled to hourly pay and overtime wages for the period he was not treated as an employee.

[6] According to the Bankruptcy Court's Preliminary Ruling on various motions, at some point during the bankruptcy proceedings, the Chapter 11 Trustee became a temporary receiver. ECF No. 156-1 at 44. The temporary receiver was officially appointed in October 2014 pursuant to a separate Bankruptcy Court order.

[7] Defendant Gerrard is an attorney at Gerrard Cox Larsen. References to "Gerrard" and to "the Receiver" are made interchangeably.

manage, and run the Club and the Property; collect all proceeds generated by the Club and the Property; pay all expenses related to or incident to the Club and the Property; replace current employees or persons managing and operating the Club and the Property, and employ such persons as reasonably necessary to operate the Club and the Property in the Receiver's discretion; and have other such authority as may be necessary. . . ." The Bankruptcy Court also ordered Gerrard to continue to attend weekly management meetings with the owners of OGE and OGEAD— including Ms. Eliades and Mr. Eliades (referred to as "the Members" in the Bankruptcy Court's order). Gerrard had the authority to act in accordance with any unanimous decision of the Members. Otherwise, Gerrard was to exercise his business judgment to make decisions for the Club. Only Gerrard, and not the Members themselves, could give directions or instructions to employees during the receivership.

Gerrard determined to hire Maltman as an employee in December 2014 based on a recommendation that Maltman was not earning a sufficient income as an independent contractor.

In 2015, the Club was sold to Sterling Entertainment Group LV, LLC. Gerrard is still the Receiver in winding up and dissolving OGE and OGEAD following the sale.

Mr. Eliades is part owner of both OGE and OGEAD. His interest constitutes a 42% ownership share of the entities that own the Club. He claims, during the time Plaintiffs' worked at the Club as valets, he was infrequently present at the Club, at most three to four times per week, for an hour or two each time. When Mr. Eliades was at the Club, he would sign checks prepared by the accounting department, look at financials, and attend meetings. Mr. Eliades regularly attended weekly meetings with Dolores and the representative, pursuant to the Bankruptcy Court's orders.

Ms. Eliades is also part owner of OGE and OGEAD. Her interest constitutes a 42% ownership share of the entities that own the Club. Between 2001 and 2009, Ms. Eliades was general manager of the Club. She claims she was shut out from decisionmaking and any Club-related information from 2009 to 2013, because her father told her to leave the Club. Ms. Eliades was one of several parties that filed requests for a Receiver to be appointed to manage the OGE

///

and OGEAD entities and the Club during the bankruptcy proceedings. She also attended the weekly management meetings on a regular basis.

Other independent lawsuits have also been filed against the Club. In November 2014, Malanie Ballew sued for FLSA violations ("Ballew lawsuit") not related to the valet position. In November 2015, Bryan Gonzales sued for FLSA violations related to the valet position.

**C. Disputed Facts**

The Court finds the following facts to be disputed.

The parties dispute whether Plaintiffs acted entirely as independent contractors in the context of their relationship with the Club. Defendants contend that Plaintiffs were solely independent contractors. Plaintiffs respond that they provided promotional services as independent contractors but qualified as employees when working as valets for the Club. The parties dispute if Plaintiffs' multiple responsibilities related to the Club qualify as distinct positions: (1) an independent contractor providing promotional services, (2) an employee working as the Club's valet, and (3) an employee working for OG VIP as a limousine driver.

The parties also dispute as to whether Mr. Eliades or Ms. Eliades actually made any specific decisions regarding the nature and condition of Plaintiffs' relationship with the Club during the weekly meetings, prior to the formal appointment of the Receiver in October 2014.

It is disputed whether Plaintiffs' 1099 forms encompass fees solely earned as promoters or as promoters and valets. The parties dispute whether fees owed and paid to Plaintiffs as promoters can be included as wages earned as valets for purposes of the FLSA. The parties also dispute whether Plaintiffs promoter fees were paid in cash entirely or also by check.

The parties dispute whether OG VIP is a company related to OGE and OGEAD or managed by and owned by the same persons. It is therefore disputed whether wages and fees paid to Plaintiffs for driving limousines owned by OG VIP can be included in wages owed to Plaintiffs as valets by OGE and OGEAD.

The number of hours Plaintiffs worked as a valet, rather than a limousine driver or promoter, is also disputed.

### III. LEGAL STANDARDS

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

### IV. DISCUSSION

The Court begins by addressing the four motions for summary judgment and then addresses the motion for sanctions and the motion in limine.

**A. Motions for Summary Judgment**

Plaintiffs and Defendants both move for summary judgment on Plaintiff's FLSA claims. Plaintiffs claims rely on three FLSA provisions: Sections 206, 207, and 216(b). Section 206 is the FLSA's minimum wage provision, which requires an employer to pay its employees "not less than $7.25 per hour." 29 U.S.C. § 206(a)(1). Section 207 is the FLSA's maximum hours provision, which entitles a qualifying employee to time-and-a-half wages (or more) for hours worked in excess of forty hours in a workweek. Id. § 207(1). Section 216(b) allows for employees to recover liquidated damages for violations of Sections 206 or 207. Id. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

The parties dispute the following: (1) whether Gerrard is entitled to quasi-judicial immunity as the court-appointed Receiver; (2) whether Plaintiffs qualify as employees under the FLSA and Defendants qualify as employers under the FLSA; (3) whether Plaintiffs were paid in accordance with the FLSA as a matter of law based on the number of hours worked in conjunction to the commission and fees paid. The Court resolves each dispute in turn.

### i. Quasi-Judicial Immunity

The Court first turns to the issue of whether Gerrard is entitled to quasi-judicial immunity. 28 U.S.C. § 959(a) provides, in relevant part:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. . . .

The doctrine of quasi-judicial immunity affords court-appointed trustees and receivers absolute immunity. New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1302 (9th Cir. 1989). "Our case law teaches that absolute judicial immunity generally immunizes persons . . . who, pursuant to court appointment, administer the affairs of litigants. For instance, trustees appointed in a bankruptcy proceeding are afforded absolute immunity." Id. at 1302–03. "[A] trustee or receiver derives his immunity from the judge who appointed him. Thus, the trustee also loses his immunity if he acts in the clear absence of all jurisdiction." Mullis v. U.S. Bankr. Court for Dist.

of Nev., 828 F.2d 1385, 1390 (9th Cir. 1987). Further, "'[a]ctions against the receiver are in law actions against the receivership or the funds in the hands of the receiver, and his contracts, malfeasances, negligences, and liabilities *are official, and not personal*, and judgments against him as a receiver are payable only from the funds in his hands.'" Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab., 585 F.3d 1211, 1219 (9th Cir. 2009) (emphasis in original) (quoting McNulta v. Lochridge, 141 U.S. 327, 332 (1891)).

Thus, under the quasi-judicial immunity doctrine, receivers and trustees cannot be held personally liable for acts taken within the context of operating the business pursuant to appointment. See id. However, while the Ninth Circuit has "consistently held that liability will not be imposed for [an appointed trustee's] mistakes in business judgment[,]" the Court has held trustees liable for acts outside of the scope of their authority. Bennett v. Williams, 892 F.2d 822, 824 (9th Cir. 1989) (citations omitted); see also [.]" In re Cochise Coll. Park, Inc., 703 F.2d 1339, 1357 (9th Cir. 1983) (citing, in part, Mosser v. Darrow, 341 U.S. 267, 273–74 (1951) ( "Although a trustee is not liable in any manner for mistakes in judgment where discretion is allowed, he is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law[.]"). The act forming the basis for liability must be "done in the 'clear absence of all jurisdiction'" rather than "in excess of [a judicial officer's] authority." Miller v. Davis, 521 F.3d 1142, 1148 (9th Cir. 2008) (quoting Cf. Schucker v. Rockwood, 864 F.2d 1202, 1204 (9th Cir. 1988)). To determine if a receiver is entitled to quasi-judicial immunity, "[t]he threshold inquiry is whether 'the precise act is a normal judicial function.'" New Alaska Dev. Corp., 869 F.2d at 1304 (recognizing the "'precise act' of a receiver pilfering corporate assets is not normally performed by a court-appointed receiver."). "Whether a public official is entitled to absolute immunity is a question of law[.]" Miller, 521 F.3d at 1145.

Gerrard argues in his Motions for Summary Judgment that quasi-judicial immunity provides him a defense to liability. He argues that Plaintiffs have not demonstrated that he engaged in conduct outside of the scope of his authority or that he had any knowledge of the alleged FLSA violations in order to remedy them. Plaintiffs contend that Gerrard can be held personally liable for violations of FLSA during the time he was temporary Receiver because he exceeded the scope

of his authority by engaging in FLSA violations. Plaintiffs further argue that Gerrard is liable for negligence since he failed to act as a reasonable receiver and inquire into the status of the Club personnel.

The Court finds Gerrard is entitled to immunity under the quasi-judicial immunity doctrine. The Court finds the record does not support a finding that Gerrard knew about Plaintiffs' alleged FLSA violations. Indeed, Plaintiffs admitted in their depositions that they never met Gerrard or made him aware of the alleged violations. Further, the two lawsuits filed against the Club did not provide notice of Plaintiffs' claims. The Ballew lawsuit possibly alerted Gerrard to a FLSA claim for other types of employees, it did not alert him to FLSA claims related to the valets. The Gonzales suit was not filed until November 2015—the time at which Plaintiffs' relationships with the Club were ending. The evidence Plaintiffs provide merely shows that Gerrard was aware of an employment relationship (possibly in the form of independent contractors) between Plaintiffs and the Club. While being aware of and not remedying known FLSA violations might have subject Gerard to liability, the facts do not demonstrate any awareness by Gerard of violations of federal labor law. The Court finds the Gerrard's alleged failure to not further inquire into the status of the valets as employees in terms of the possibility of FLSA violations does not waive the immunity to which Gerrard is generally entitled. Plaintiffs also fail to identify any legal duty identified by controlling caselaw that would have required Gerrard to investigate any possible legal violations as the Receiver. The Court therefore find Gerrard is entitled to immunity and grants his Motion for Summary Judgment as to this issue.

### ii. FLSA Employers and Employees

The Court determines next whether an employer-employee relationship existed between the Eliades Defendants and Plaintiffs. 29 U.S.C. § 203(d) provides in relevant part: "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." An "employee" is any individual employed by an employer, with certain exceptions and clarifications not pleaded in this case. 29 U.S.C. § 203(e). "Employ includes to suffer or permit to work." 29 U.S.C. § 203(g). The Court must determine whether the undisputed

/ / /

facts support a legal conclusion that Mr. Eliades and Ms. Eliades were employers under FLSA and that Plaintiffs were employees under the FLSA.

To determine whether an employer-employee relationship exists, the Ninth Circuit has recommended a four-factor economic reality test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Gilbreath v. Cutter Biological, 931 F.2d 1320, 1324 (9th Cir. 1991) (citation omitted). However, these factors are "merely guidelines" that are "not [to] be blindly applied" – instead, the Court should consider the totality of the circumstances. Id.

The Ninth Circuit has held that "the definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009) (citation omitted). "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Id. at 1091 (citation and quotation marks omitted).

Likewise, "[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." Real v. Driscoll Strawberry Assocs., 603 F.2d 748, 755 (9th Cir. 1979). Real sets forth six factors to consider when "distinguishing employees from independent contractors[.]" Id. at 754. The factors include:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business.

Id. None of the factors are dispositive; courts must consider the "circumstances of the whole activity." Id. at 754–55 (quotation omitted).

Whether a defendant is a "employer" under FLSA is a question of law. In re Brown, 743 F.2d 664, 666 (9th Cir. 1984). However, the determination of "the nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 910 (9th Cir. 2004). Thus, the question of whether an individual is an "employee" rather than an "independent contractor" under the FLSA is a question of fact. See Real, 603 F.2d at 755 ("Upon examining the record in light of these standards, we conclude that the district court erred in ruling that the appellants failed to raise genuine issues of fact as to whether they are "employees" … under the FLSA."). When the record contains evidence that supports contradictory findings regarding the nature of an employee's work, an inquiry into the facts must be made. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1128 (9th Cir. 2002).

Both Mr. Eliades and Ms. Eliades admit that they attended weekly meetings to discuss the business and operations of the Club, pursuant to the Bankruptcy Court's order. However, both dispute that they made any actual decisions concerning the nature or conditions of Plaintiffs' alleged employment. Plaintiffs contend that the Gilbreath "economic realities" test is satisfied and that Mr. Eliades and Ms. Eliades both exercised control over the nature and conditions of the employment relationship in the manner of an employer. Plaintiffs also argue that they were economically dependent upon Mr. Eliades and Ms. Eliades and were therefore employees under Real.

The Court finds that the undisputed facts demonstrate that Mr. Eliades and Ms. Eliades were both employers of Plaintiffs with respect to the management decisions they made prior to the appointment of the Receiver. They both were empowered to take action, direct or indirect, in the interest of Plaintiffs. There is no dispute that the Eliades Defendants regularly attended weekly meetings with the Receiver or a representative from his firm where decisions were actually made about the operations of the Club. Mr. Eliades and Ms. Eliades both admit their attendance during their depositions. The undisputed evidence shows that both Mr. Eliades and Ms. Eliades attended meetings at which the ongoing operations of the Club business were discussed and decided, including employment.

///

From the time Mr. Eliades and Ms. Eliades were ordered to attend weekly management meetings to the time Gerrard was appointed as Receiver, Mr. Eliades and Ms. Eliades had the authority to terminate employees so long as all Members unanimously consented to such firing. Plaintiff Amsel was terminated twice from his position as valet; one of the former Club managers, Peter Nikolopoulous, testified during deposition that not only was he not given the authority to hire and fire valets but that either Mr. Eliades, Ms. Eliades, or their sister directed the manager to terminate Amsel. Further, the topic of "firing" was discussed at the January 21, 2014 meeting with the Club owners prior to the appointment of the Receiver. Taking all of the undisputed facts into consideration the Court finds that the totality of the circumstances based upon the undisputed facts supports a determination that Mr. Eliades and Ms. Eliades were Plaintiffs' employers from August 23, 2013 to October 7, 2014.[8]

Further, the Court finds Plaintiffs were employees rather than independent contractors under the considerations identified by Real. The Court finds it significant that Mr. Eliades and Ms. Eliades each owned a 42% share of the entities that owned the Club. This ownership interest confirms that Mr. Eliades and Ms. Eliades possessed significant authority to control the circumstances of Plaintiffs' work. The Court also recognizes that the definition of "employ" under FLSA includes "to suffer or permit to work." It is undisputed that the valets contributed to the generation of business and clientele for the Club, and the Court finds that Mr. Eliades or Ms. Eliades would not have permitted Plaintiffs to remain on the premises for several years if they were not contributing to the Club's business, particularly in light of the Eliades Defendants' attendance at weekly meetings to discuss the troubled finances and operations of the Club. The undisputed facts demonstrate that the work of Plaintiffs was an integral part of the Club's business, as the valets working the front door helped to generate clientele. See Gerrard Deposition, ECF No. 153-23 at 14.

///

---

[8] The Court limits its determination to the period before Gerrard was appointed Receiver. Although certain evidence demonstrates, for example, that salary negotiation was discussed at the October 10, 2014 weekly management meeting with the Club owners, Gerrard had already been granted authority to act unilaterally with respect to employees at that time.

While the Court does not find that all of the suggested <u>Real</u> factors are implicated, the Court nonetheless finds that the totality of the circumstances confirm an employer-employee relationship between each of the Eliades Defendants and Plaintiffs. Even construing the facts in the light most favorable to Mr. Eliades and Ms. Eliades, there is no dispute that both had authority to make management decisions controlling the nature and conditions of Plaintiffs' work. The Court is not persuaded by Defendants' arguments that there is no purported evidence of an actual specific decision regarding the Plaintiffs that the Defendants made. The case law does not require evidence of an actual specific instance of an exercise of authority, especially where there is undisputed evidence of their involvement in operations decisions. Furthermore, the Bankruptcy Court gave the Eliades Defendants and other Members of the entities that owned the Club the explicit authority to make management decisions at their weekly meetings. The Court therefore finds an employer-employee relationship existed as defined by the FLSA.

### iii. Wages Paid

The Eliades Defendants join in Gerrard's argument that Plaintiffs were paid more than the minimum wage based on the commissions and fees paid to Plaintiffs each year. 29 C.F.R. § 778.118 provides:

> When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek …, and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard.

29 C.F.R. § 778.118.

Defendants argue that Amsel and Rivera's 1099 forms in correlation to their W-2 forms show that Plaintiffs were paid wages satisfying the minimum wage and maximum hours provisions. Defendants also argue that Maltman's claims must be limited to hours worked prior to December 10, 2014, the date on which Maltman was added to the payroll at an hourly rate of $8.75 and an overtime rate of $13.13. Plaintiffs argue that the "commissions" relied on by Defendants have been shown to be "promoter fees" earned in their roles as independent contractors providing promoting services and "limousine fees" earned as drivers for a third company that

provided patrons to the Club.  Plaintiffs contend that the commissions cannot contribute under 29 C.F.R. § 778.118 to wages owed to Plaintiffs for their work as valet employees.

As an initial matter, the Court agrees with Defendant that Maltman's claims are limited to the timeframe before he was placed on the payroll.  However, the Court finds a genuine issue of material fact exists as to whether Plaintiffs were paid minimum wage in their valet roles—or even if the roles were entirely separate.  Defendants' calculations conflate the number of hours Plaintiffs worked promoting the Club, valeting for the Club, and driving limousines for OG VIP.  Thus, the calculations also conflate the fees earned as promoters, valets, and drivers.  But Plaintiffs only seek wages allegedly owed to them by OGE and OGEAD for the hours worked as valet employees.  Further, the parties dispute the number of hours Plaintiffs worked as valets.  Because the 1099 and W2 forms include funds payed for promoting services, driving services, and valet services and the number of hours Plaintiffs worked as valets is in dispute, the Court denies summary judgment on this issue accordingly.

### B. Motion for Sanctions or Motion in Limine

In addition to the summary judgment motions, Plaintiffs move for sanctions or for the exclusion of testimony provided by Leighton Koehler ("Koehler").  Koehler is a former employee of Gerrard Cox Larson.  Gerrard attached Koehler's declaration to the Reply in support of his Motion for Summary Judgment.  Because Gerrard did not disclose Koehler as a witness during discovery as required by FRCP 26, Plaintiffs seek an order for sanctions and an order excluding Koehler's testimony under FRCP 37.

FRCP 26(e)(1) requires a party to supplement or to correct disclosures or responses made during discovery upon learning "that in some material respect the disclosure or response is incomplete or incorrect, and [] the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  FRCP 37(c)(1) provides that when a party fails to comply with FRCP 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FRCP 37(c)(1) also permits a court to order the payment of reasonable expenses caused by the Rule 26(e) or other appropriate sanctions.

The Court finds Gerrard satisfied his burden of showing the failure to supplement his disclosures to include Leighton Koehler as a witness, to technically apply with Rule 26, was harmless. The Court bases its findings on three facts: (1) Plaintiffs rely on knowledge Koehler may have had and communicated to Gerrard according to the declaration of Thom Svast; (2) Koehler was discussed during the depositions of Amsel, Gerrard, Mr. Eliades, Ms. Eliades, (3) Koehler has been referenced in multiple exhibits from both parties. The Court acknowledges that the technical requirements of Rule 26(e) were not satisfied by Gerrard—or Plaintiffs, as they too rely on Koehler. However, the three aforementioned facts conclusively show that Plaintiffs were made aware of Koehler early on in the discovery process. The Court therefore finds that use of Koehler's declaration, to rebut a declaration referencing statements made by Koehler, does not prejudice the Plaintiffs. See Lanard Toys Ltd. v. Novelty, Inc., 375 F. App'x 705, 713 (9th Cir. 2010) ("Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."). The Court denies the Motion for Sanctions and the Motion in Limine accordingly.

## II. CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Defendant Aristotelis Eliades' Motion for Summary Judgment (ECF No. 143) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Douglas D. Gerrard's Motion for Summary Judgment Regarding Claims of Jonah Amsel and Julio Rivera (ECF No. 151) is GRANTED. Gerrard is entitled to quasi-judicial immunity. The Clerk of the Court is instructed to enter judgment in favor of Defendant Gerrard on the two remaining claims.

**IT IS FURTHER ORDERED** that Defendant Douglas D. Gerrard's Motion for Summary Judgment Regarding Claims of Eduardo Maltman (ECF No. 152) is GRANTED. Gerrard is

entitled to quasi-judicial immunity. The Clerk of the Court is instructed to enter judgment in favor of Defendant Gerrard on the two remaining claims.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on Liability Against All Defendants and on Defendant Gerrard's Tenth and Eleventh Affirmative Defenses (ECF No. 153) is GRANTED in part and DENIED in part. The Court grants the motion in part, finding Aristotelis Eliades and Dolores Eliades were Jonah Amsel, Julio Rivera, and Eduardo Maltman's employers under the FLSA. The Court denies the motion in regards to Douglas Gerrard's affirmative defenses.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (ECF No. 185) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine (ECF No. 186) is DENIED.

**IT IS FURTHER ORDERED** that the remaining parties submit a Proposed Joint Pretrial Order no later than October 15, 2018.

DATED: September 30, 2018.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**